Please proceed. Good afternoon, Your Honors. My name is Ben Maicelis. May it please the Court, I represent the appellants, the Nichols. That's Mindy, Mike, and Georgia. Pardon me, Mr. Maicelis, you come on the day sheet as Mark Garagos, so why don't you give us the spelling of your name? Perfect. Maicelis is spelled M-E-I-S-E-L-A-S. Okay. May it please the Court, the central issue here is whether or not there are triable issues of material fact regarding the state-created danger. I want to address that issue first. Then I want to address the district court's ruling on qualified immunity. And then third, I want to get to the declarations because, as my presentation will make clear, I don't think we even need to get to the issue of declarations and whether the court abused its discretion. I think there's sufficient evidence in the record already. I was trying to kind of postulate where, in my mind, the state-created danger, in our view, differs from the court's view. And I could point to a specific portion of the court's summary judgment order that I will reference right here. And that's page 4 of 16 on the court's summary judgment order. And let me read what the court says. The court's referring to the sign-up process for my clients. And the court discusses that, according to Gil, who was the Palm Springs police officer, he had my client sign the confidential informant sign-up sheet. They put it into a box for destruction, destroyed the confidential informant sheet, and never alerted my clients that they were confidential informants. For a two-year period of time, from 2010 to 2012, my clients legitimately believed they were confidential informants. They signed a sign-up sheet. They went through the process they would otherwise have gone through. They were being asked to go through various missions and tasks that confidential informants would go through. And they were never told one way or another. And here's where the court, the district court on page 9 of 16, says that plaintiffs missed the point here. But I don't believe that we've missed the point here. He says we missed the point by providing elaborate evidence about why they're confidential informants. That was done very intentionally because the state-created danger that exists here is that you had officers who signed up my clients, my clients reasonably believed they were informants, and they ran very dangerous missions. They were involved in the number one meth bust in Palm Springs. Counsel, let me just stop you right there. I just want to make sure we're all talking about the same issue in this case. As I understand it, the claim you're making is that the officers at some point improperly disclosed that your clients were informants, correct? Correct. I think that's one of the points that we're making. All right, so I don't think there's any dispute that your clients, for the purposes of today, that your clients were informants for the police. So let's take that as a given. I was trying to understand from your briefing in this case, what discloser are you complaining about? Are you complaining about the disclosure at the, I'll call it the town hall, for lack of a better word, or are you complaining about the actual write-up in the reports where the officer mentions, I know the Nichols? And that's where I was focused on was this general pattern of practice of how they treated them because there wouldn't be otherwise a policy of how you would go about protecting confidential informants. Would you answer the judge's question? Let's get back to the question here. You don't have a lot of time. Are you complaining about the town hall or are you complaining about being written up in the reports? Both. Okay, where in your brief to this court do you argue that the town hall was a violation of their rights? Well, to get into the town hall, as this court is aware, we'd have to get into Joy Meredith's declaration. Okay, but again, the question is, in the brief to this court, where do you argue that the town hall was a violation of their rights? Well, we argue in the brief that the state created danger and the affirmative act of leaking that information was the breach. And I could try to point to the specifics. Because here's why I ask is because it seems, I've looked at it. I could not find that being referenced. I had my lock clerk look at it. He couldn't find it being referenced. And so if it's not specifically in that brief, then I think the issue is then you're limited to those two police reports. Then I think the question for this court is, is there clear case authority that would have put the officers on notice that putting the names of these two people, the Nichols, in a police report, could violate their constitutional rights? As I understand this case, that's what we're looking at here. Have I framed this case incorrectly? No, I think that the disclosure is obviously a major point of the case, and I think it's framed accurately as you state it. Okay, so what is the clear, if that's what we're looking at in this case, what is the clear case authority that says putting their names in a police report would violate their constitutional rights? I think you have to look at Kennedy, and we don't focus on the distinction that's being made with the 6th Circuit or the 8th Circuit. The 6th Circuit and Gatlin, I think the 8th Circuit, the Sumeria may have got those two wrong, almost argue that it's a confidential informant situation. Really, per se, you can't create a state danger just because in those specific cases those individuals knew what they were getting themselves into, basically. And to me, this case has the distinction that's more like Kennedy because you've taken these individuals, the Kennedy line, Mungers, Woods, where you've taken these individuals, there was a policy and protocol in place for protecting the identity of confidential informants. I think the record is replete with evidence of these officers recognizing the importance of the identity of confidential informants, and they're putting the confidential informant identity out there. And I think that's very similar to what we see in Kennedy, what we see in Munger. In Kennedy, the policeman was told by the neighbor, don't tell the neighbor that I've told you that he is a sexual pervert. And the police officer did tell, and they were murdered as a result. Now, to answer Judge Owen's question, where in the record is there any evidence that anyone other than the police officer who filled out the report and the district attorney read the report that said that these people had been involved in actually in buying stolen goods? So it didn't say they were informants, it said they were fences. Well, Your Honor, in the order itself, it references the factual record where those specific individuals that they informed on were actually retaliating against them, and for purposes of summary judgment, an inference can be drawn. Where is the evidence that somebody other than police officer Ray and the district attorney ever saw this report? Well, the fact that the individuals who were arrested because of the work said all those words that we're going to get you because you're a rat. So the individuals, the two drug dealers you're talking about? Right, Whitting and Whiting as part of that drug, as part of that bust where our clients were told to pick these individuals up and drive them to be arrested in July of 2012. No, no, to pick up Whiting and have her arrested at her home. Correct. Where these people were waiting, Whiting. But in that report, it seemed to me that all it said was the Nichols have been buying material from Whiting, which makes them out to be fences, not to be confidential informants. That's the problem I'm having trouble with. I can't get my mind around who called them out as snitches. Well, I guess two things. The first thing regarding the status of confidential informant, right, whether they were citizen informants or confidential informants. The fact on summary judgment is that the officers destroyed the contract, so we don't have a copy of the contract. Let me point to the record, though, in terms of the conduct by the officers. You're talking about other matters. You're not answering my question. Where is the evidence that somebody read the police report other than Officer Ray Fernandez and the DA, and that led them to unmask the Nichols as confidential informants? Tell me. To tell you the fact that they were targeted with violence after they were on that arrest. They could have been targeted by violence without that being made known. You can't say that the only reason they were targeted for violence was that. True, but that's a factual question in our mind for the jury to determine that. But it's speculation. It's saying this report was written, they were targeted for violence, therefore this report had to cause that. That's not enough. I think it's inferential, but if we turn to the record, which is A253, I'm asking questions at this deposition about the report, and I say, Here on July 24, 2012, you submitted a report. This is to Ray Fernandez, by the way. Containing the name of my clients, correct? Yes. At this time, my clients were still citizen informants. Answer, yes. Okay, and you didn't protect their identity in the report? No. And you told me before that there was something that you would do, out of the goodness of the heart, would be to protect their identity, correct? I said I do that sometimes, yes. And if you look at But that doesn't have anything to do with Judge Bea's question, which is where is there evidence that somebody actually read the report? The evidence would be Do you want to take one more quick shot at answering that question? I'll try to take one more shot at it, Your Honor. One of the issues, too, that we raised in our brief is that we don't have to show that. It's a public record, and as we cite to the cases, that we don't know. But once it was made a public record, anyone could have requested that public record. But that, I don't understand that at all. I mean, I think that it is clear that there's no evidence that anybody saw this. But even if somebody had made a Public Records Act request for the police report, I mean, it's common practice to identify confidential informants in police reports because the Public Records Act, California Public Records Act, says that information identifying a confidential informant can be redacted from a police report in response to a Public Records Act request. And there may be people who need to know, people who are reading the report, who need to know who the confidential informant is, like the DA, for example. So even if somehow the language in the report could be interpreted as identifying these people as confidential informants, and even if there were something in the record to suggest that anybody made a Public Records Act request for the police report, isn't the answer that they would have gotten a redacted police report? And isn't the answer that police officers are allowed to name confidential informants in police reports because of the provisions that protect against their disclosure? And that's if they're confidential informants and they are being treated as such with all of the protections attendant with being a confidential informant. What does that mean? Why should we assume that if somebody had made a Public Records Act request for this police report that there wouldn't have been a redaction? What we're saying here is that that's irrelevant. What's relevant is they put our client in a vehicle, not being a confidential informant and calling to them, putting them in that danger and risk and not protecting them or not caring to protect them whatsoever. And then within a very short period of time thereafter, they're targeted with violence by someone. Usually in these cases, the plaintiff is somebody who has got hurt or is the family member of somebody who got killed. Did anything actually happen to your clients? No, and that's a good point. One of the issues is they went into hiding soon thereafter, right after July 26th and July 27th. And so the question that we always had, and we think that that's not dispositive. We don't think that you have to wait until there's a death or there's a significant injury if someone's leaking your identity and making that public. Or the affirmative act here as well is that they're bringing these individuals who they destroy the confidential informant contract, disclaiming the fact that they're confidential informants internally, therefore not providing them with any of those benefits, protection that confidential informants would, and they're putting them on the street in the most dangerous of situations. The deliberate indifference element is met when he throws out and destroys the confidential informant contract. But from your point of view then, if a police officer wrote a police report and said, I spoke with Judge Owens and Judge Bea and they were very helpful in our investigation, and that's what it says, that we helped them, and that's made a public record, there could be dangerous characters out there who could conceivably get that police report. Would we have a cause of action then because the police said we were helpful? I think you would if they made you confidential informants and they did it that way. Why would it matter if they made me a confidential informant or not? If it's a state danger, if it's merely putting your name in a police report, if that's the danger, why does it matter what other status we're granted? Because if you're a confidential informant, they're taking affirmative acts versus voluntarily receiving this information. They're placing you into the danger to begin with. They're putting you into the meth bust. In the example that you gave, the citizen's not being thrown into those situations on their own. Yes, they're reporting, but the state isn't taking custody and control and putting them into those dangerous situations. In this situation, they cloaked citizens as confidential informants, told them you're a confidential informant with a contract, ripped up the contract, didn't tell the informants, and the informants were to infiltrate a very dangerous underbelly of the Palm Springs community based on the reasonable belief as a CI that they were going to get protected. I know you're running out of time here, but this gets back to my first question. So what exactly is the harm you're complaining about? Is it being named in a police report? Is it being asked to be an informant? Is it being asked to infiltrate the underbelly of Palm Springs? I'm still trying to understand what is the cause of action here. The cause of action is for all three of those things. And those are in your brief. You actually put those in your opening brief to this court. I know it's definitely in the record. Okay, the question was it. All right, I'll leave it there. I'll defer to the presiding judge. Thank you. If you have any further questions after. Thank you. Good afternoon, if it please the Court. Roberta Krause appearing for the appellee officers. Would you put that microphone closer to you so I can hear you? Is that better? Your voice is very low. I'm sorry. I'll try to speak louder. I think by your question, you kind of hit the nail on the head. In their brief, they focus only on the one police report that was authored by Ray Fernandez on, I believe, July 26, 2012. And the claim is that that particular brief somehow exposed the Nichols as informants. Although, admittedly, and they admit it, the brief did not say that Nichols are acting as informants. You're saying the brief. You mean the police report. In the police report, yes. Excuse me. It did not identify the Nichols as informants. It simply said, I know the Nichols. They're owners of this secondhand shop. I've talked to them about items they've bought from Angela Whiting. And it's not unusual for Ray Fernandez to have that relationship with the Nichols because in 2009, when she first met the Nichols, she was assigned as a police officer to oversee all the pawn shops, all the secondhand shops in the city of Palm Springs, to make sure that they were compliant with the law when they bought items and they weren't receiving stolen property. Would you please address Mr. Marcellus's point? As I understand it, he's saying that the Nichols were drawn in by the police to become confidential informants with the understanding that their identities would be protected pursuant to a confidential informant contract, which was later destroyed nefariously by the police. Right? Is that what you understand his position to be? I believe that's what he said today, yes. Right. What's your position on that? Well, my understanding, and I think what the evidence shows, is that the Nichols have been acting as informants for, according to them, from the evidence, for different police agencies and different officers since approximately 2007. 2008, they started acting as informants for the DEA. It wasn't until 2009 that they came into contact with Ray Fernandez, who was, like I said, in charge of pawn shops and secondhand shops in the city of Palm Springs. And that's how they developed the relationship. And then they started, according to them, providing her with information regarding stolen goods and the drug trade. But they'd already been doing that for other agencies prior to that. Is there any difference between the protection which the Palm Springs Police Department accords to confidential informants that have a contract and citizen informants who just give their information by throwing it over the transom? No. No, there would be no... Is there any evidence that there's any additional help or security given to confidential informants as opposed to citizen informants? I believe that Gil Fernandez in his deposition testified about that, that under the policy of his agency that he was working for at that time, which was not the city of Palm Springs, it was the Coachella Valley Narcotics Task Force, that they would protect any informant. And that is the general policy in the city of Palm Springs. It really isn't a differentiation whether there was a contract or not a contract. A citizen informant or voluntary informant would be protected. An informant under a contract would be protected. Well, if they would both be protected, why did Ray Fernandez put the names of these people in her police report? Well, the police report was regarding the raids that were conducted at the Nichols Pawn Shop home and storage unit, and it was regarding the arrest of Michael Nichols. And so it was a police report about the Nichols. They were not identified as confidential informants. They were not used as confidential informants in that police operation. They were the suspects in that operation, and that is why their names were in the police report. But like you said, no one made a record request for that police report. It went to the DA, and I believe in 2014 it went to Mindy Nichols. And those are the only people who requested the report and received the report. It would be speculation, but presumably if there were informants named in the report, that identifying information would be taken out. But there was no general public Records Act request for that police report. No one who ever threatened the Nichols ever said, oh, I saw this police report, and I read it, and I'm presuming that you guys must be informants. That's all speculation. There's no evidence of that. Can I ask you a question about this Affirmative Act business? The discussion of that has me a little confused, the discussion of that in the briefs and the discussion of the Sixth Circuit case and the Eighth Circuit case. I'm going to try to state what I think the test is, and I want to know if you agree or disagree with this. I think with respect to confidential informants, it's not enough to give rise to a state-created danger claim merely to sign somebody up as a confidential informant. The police must sign somebody up as a confidential informant and must, during the course of their dealings with that person, be deliberately indifferent to a risk to that person that is more specific and more immediate, perhaps, than the general risk associated with being a confidential informant. Do you agree with that statement? Yes, and that, I believe, is what the Gatlin case and the Sumar case held. And then there's the Doe case. If I could just follow up real quick. So then there's this discussion of affirmative act, and I'm, I guess, I'm having trouble understanding where this affirmative act concept fits into the framework that we just agreed exists. Because if you sign it, like, let's say, let me give you a hypothetical. Let's say that the police sign somebody on to be a confidential informant, okay? And then they're up on a wire, and they hear on the wire that there is somebody lying in wait at the informant's apartment, and they plan to kill the informant when he gets back to the apartment. And let's say the police hear that on the wire, and they don't call the informant to tell him, don't go back to your apartment. That would still, I mean, there's no, quote, unquote, affirmative act, right? But that would still give rise to a state-created danger claim. I mean, I don't think it's not at all the facts of this case, but I'm just trying to understand the law, and I'm trying to understand what position you would take on the affirmative act issue as it relates to the scenario that I just spun out. And, of course, that has nothing to do with our case. But in that fact scenario that you just gave, the officers have specific information that would place the informant in danger at a specific location at a specific time. And perhaps because of those factors, that would put on the officers the duty to take an affirmative act to keep the informant safe. Or maybe another way to put it would be by hearing that and then ignoring it and not telling the confidential informant not to go back to his apartment, the officers have engaged in conduct that reflects a deliberate indifference to a known and specific risk beyond the general risk of being a confidential informant. And whether you want to call that a, quote, affirmative act, unquote, or an omission or whatever, they have engaged in conduct that reflects a deliberate indifference to a specific risk that is more significant than the general risk of being a confidential informant. Fair? Correct. That's fair. Okay. And your argument is that there's nothing remotely like that in this case, assuming for the sake of argument that they signed him up to be a confidential informant, nothing that they did or no omission that they committed resulted in the plaintiffs experiencing a risk that was greater than the general risk of being a confidential informant and certainly no evidence that the officers were deliberately indifferent to any specific risk that the Nichols were facing. Correct. Okay. What about your learned friend's references to threats that these people received, that the Nichols received, I think maybe even from a relative of Whiting? There was some evidence of different threats. Where that came from, there's no evidence that it arose from anything the Nichols was exposed to by the Palm Springs Police Department. There was evidence that the Nichols had told at least nine other people that they were acting as informants. Their children knew, friends of their children knew, parents of the children's friends knew. There was at least nine people out in the community that they specifically told that they were acting as informants prior to this July 2012 police report ever being written by Wray. Sounds like they were really into being confidential informants. Well, in August, of course, they posted everything in their window about everything they'd done. At that point, they revealed everything. They had text messages and YouTube videos that they referenced in postings in their storefront window, which they were advised by the police they should take down because it could expose them to danger. And they did not do that. So your position is that the people who really told the public that they were police informants were the Nichols by the evidence of the nine people they told, and this was before Officer Ray Fernandez finished her report? Correct. Where in the record can I find that? Unfortunately, I'm sorry, I don't have a page cite in front of me. I'd be happy to provide it to you. It was part of the separate statement and the evidence that we submitted in support of our motion for summary judgment. In your separate statement? Correct. And it also was referenced by the judge in his order, by the district court judge. Do you have a page number of the district court judge finding that? I don't have the order in front of me. I apologize. It'd be a good thing for you to bring the record. I have a part of the record, but not all of that. I apologize. It was a big record. Page 15 of the district court's opinion. Thank you. That's what's called a lifesaver. Thank you, Your Honor, for saving my life. I can address the last thing, the evidentiary rulings by the district court judge, where he excluded the three declarations. They were unsigned. And there's no way of knowing if these people ever saw the declarations, if they approved their content. Even after the objections, no signed declarations were submitted as an afterthought. So I think that that's not an abuse of discretion to exclude those unsigned declarations from the evidence. And if there are no further questions, I will submit. Thank you. We'll give a minute for rebuttal, if you'd like it. Thank you. Addressing the point that my learned opposing counsel raised about there being no distinction between citizen informant and confidential informant, I would point to the record at page A179, the deposition of Ray Fernandez, where I asked, what about with respect to the identity of a confidential informant? As part of your training, did you understand that you had an obligation to maintain the confidentiality of a confidential informant? Answer is yes. We go down in terms of how it would be rephrased on police reports. It specifically says as a confidential informant or CI and not by a specific name. Later on page A183, I asked the same question about a citizen informant. I say, question, we talked about protecting the identity of confidential informants. Are you aware of any policy in place to protect the identity of a citizen informant at the Palm Springs Police Department? Answer, there is no policy. That was just incorrect. The affirmative acts that we believe took place, though, and I agree there has to be an affirmative act. Kennedy states there needs to be some type of affirmative act and a deliberate indifference. We postulate the deliberate indifference is when you destroy the contract and the affirmative act, since I was getting to the course of conduct, is that you have these individuals out there who you've ripped up their confidential informant contract. You put them on the streets in the most dangerous situation. The contracts specifically say if it existed, if it wasn't destroyed, and we had it in this litigation, the informant contract states the types of protections that they believed they were getting and they did not receive those protections, and that's what happened. And then going to page 15, page 15 of the order does not specifically address the timing. In fact, it references August and specifically states that it was after the fact, was posting these videos on YouTube. Would I have recommended that as their lawyer? No, I would have been in the same malpractice case that preceded me, potentially, but no, I would not have recommended that as their attorney. They did it because they believed they were outed and now being prosecuted for stealing Pokemon cards. The reference to August is as to a former Cathedral City Police Department. The reference to the nine individuals is, quote, during the course of their informant relationship and by a man who drove Whiting to be arrested later. So timing is not—okay, thank you. We've taken you past your time. Thank you very much. This matter will be marked as submitted.
judges: Bea, Owens, Chhabria